```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION


WILLBROS WEST AFRICA, INC.,    §
and WILLBROS (OFFSHORE)        §
NIGERIA, LTD.,                 §
                               §
          Plaintiff,           §
                               §
v.                             §   CIVIL ACTION NO. H-08-2646
                               §
HFG ENGINEERING US, INC.       §
and/or ALBERT-GARAUDY          §
AND ASSOCIATES, INC.,          §
                               §
          Defendant.           §
```

MEMORANDUM AND ORDER

Pending is Plaintiffs Willbros West Africa, Inc. and Willbros (Offshore) Nigeria, Ltd.'s (collectively "Willbros") Motion to Vacate the Arbitration Award, in Part, or, in the Alternative, to Modify or Correct the Award (Document No. 1, ex. B).  After carefully considering the motion, responses, replies, sur-replies, and the applicable law, the Court concludes for the reasons that follow that Willbros's motion should be denied.

I.  Background

This is challenge to an arbitration award.  Plaintiff Willbros constructs oil and gas pipelines.  Defendant HFG Engineering US, Inc. f/k/a Albert-Garaudy and Associates, Inc. (hereinafter "HFG") is an engineering design firm.  Mobil Offshore Producing Unlimited

("Mobil") retained Willbros to serve as general contractor for two projects to build systems to liquefy natural gas that was being flared off from reservoirs in and around Nigeria. Document No. 2 at 4. The first project was named the ASASA project. Document No. 1, ex. B at 3. On October 4, 2004, Willbros subcontracted the design work for the ASASA project to HFG. Document No. 43, ex. B (ASASA Subcontract). The second project was referred to as EPC-4A, and it involved design and construction onshore and offshore. Document No. 1, ex. B at 3. Willbros subcontracted design work for second project to HFG under two subcontracts; the first of which, called the Inside Nigeria Subcontract, governed the design for the onshore components. Document No. 43, ex. C (Inside Nigeria Subcontract). The second, termed the Outside Nigeria Subcontract, governed offshore designs. Document No. 43, ex. D (Outside Nigeria Subcontract).

Each of these subcontracts contain an arbitration provision mandating arbitration in Houston, Texas, administered by the American Arbitration Association ("AAA"), in accordance with the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules.[1] In February 2007, HFG initiated arbitration proceedings against Willbros. Document No. 1, ex. B at 4. HFG asserted twenty-five (25) contractual claims seeking $4,114,556.55

---

[1] Document No. 43, ex. B ¶ 22 (ASASA Subcontract); Document No. 43, ex. C ¶ 22 (Inside Nigeria Subcontract); Document No. 43, ex. D ¶ 22 (Outside Nigeria Subcontract).

in damages.  Id.  Willbros asserted contractual counterclaims seeking $2,376,041.50.  Document No. 41 at vi.  Both parties also requested their costs and attorneys' fees: HFG requested $675,308.16; Willbros requested $595,708.81.  Document No. 41 at ix.  The arbitration hearing lasted five days, from March 3 through March 7, 2008.  On May 29, 2008, the arbitrator issued a 20-page Award, summarized below:

- HFG's claims:

    (a) Awarded $318,011.48 ($241,309.00 under the ASASA subcontract and $76,702.48 under the EPC-4A subcontract) to be paid by Willbros West Africa, Inc. within 30 days;

    (b) Awarded $216,106 under the ASASA contract for Change Orders 1-4 to be paid by Willbros West Africa, Inc., <u>but only if either (1) Mobil gives written approval of HFG's designs, or (2) Mobil uses HFG's designs</u>;

    (c) Awarded a $500,000 retainer invoice based on the EPC-4A contract to be paid by Willbros West Africa, Inc., <u>but only if Mobil provides a written acceptance notice</u>;

    (d) Awarded $14,892.47 to be paid by Willbros (Offshore) Nigeria, Ltd. within 30 days;

    (e) Denied $98,784.70 of HFG's claims because Arbitrator stated he was prohibited by UNCITRAL Rules from applying Texas law on *quantum meruit*, estoppel, and other equitable theories of recovery;

- The remaining claims of HFG were denied.

- Willbros's counterclaims were denied.

- Attorneys's fees and costs of $675,308.16 were awarded to HFG based on the finding that the amount was reasonable

>> because the parties requested similar amounts of attorneys' fees.

*See* Document No. 43, ex. E.

Willbros filed in state court its Motion to Vacate Arbitration Award in Part, and HFG removed the case to this Court. Document No. 1. The single issue to be decided is whether Willbros's Motion to Vacate in Part (Document No. 1, ex. B) should be granted.

## II.  Willbros's Motion to Vacate in Part

A.  Standard

1.  General Standard

"[A] district court's review of an arbitration award is extraordinarily narrow" and "exceedingly deferential." Prestige Ford v. Ford Dealer Computer Servs., Inc., 324 F.3d 391, 393 (5th Cir. 2003); *see also* Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 352 (5th Cir. 2004). "[F]ederal courts must defer to the arbitrator's decision when possible." Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C., 487 F.3d 255, 258 (5th Cir. 2007) (internal quotation marks omitted). The party moving to vacate the arbitral award bears the burden of proof. *See In re* Arbitration Between Trans Chem. Ltd. & China Nat'l Mach. Import & Export Corp., 978 F. Supp. 266, 303 (S.D. Tex. 1997) (Lake, J.), *aff'd*, 161 F.3d 314 (5th Cir. 1998).

4

"[W]hatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so." Prestige Ford, 324 F.3d at 394. The narrow statutory bases for vacating an arbitration award are set forth in the FAA:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

See 9 U.S.C. § 10.

Besides those statutory grounds, the Fifth Circuit has recognized "manifest disregard of the law" as an additional ground for vacatur. Kergosien, 390 F.3d at 353.[2] The Supreme Court

---

[2] The Fifth Circuit defines the test for "manifest disregard for the law" as follows:

[M]anifest disregard for the law "means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of

5

recently held in Hall Street that §§ 10 and 11 provide the FAA's "exclusive grounds for expedited vacatur and modification." Hall Street Assoc., L.L.C., v. Mattel, Inc., 128 S. Ct. 1396, 1403 (2008). This Court has observed that Hall Street at least puts in question the Fifth Circuit's previous recognition of a nonstatutory ground for vacatur based on "manifest disregard." Halliburton Energy Servs., Inc. v. NL Indus., 553 F. Supp. 2d 733, 751-53 (S.D. Tex. 2008) (Rosenthal, J.). It is also well established that an award may not be vacated even if it is arbitrary and capricious. Brabham v. A.G. Edwards & Sons Inc., 376 F.3d 377, 385 (5th Cir. 2004).

2. Exceeding Authority According to FAA

"'Arbitration is a matter of contract': The powers of an arbitrator are 'dependent on the provisions under which the arbitrators were appointed.'" Apache Bohai Corp. LDC v. Texaco

---

a clearly governing principle but decides to ignore or pay no attention to it."

Kergosien, 390 F.3d at 355 (quoting Prestige Ford, 324 F.3d at 395). A two-step test has been articulated for this challenge. First, the disregarded law must be "well defined, explicit, and clearly applicable." Prestige Ford, 324 F.3d at 395. A party requesting vacatur "must point to a controlling case with a clear rule ignored by the arbitrator." Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 408-09 (Tex. 2007). For the second step, "before an arbitrator's award can be vacated, the court must find that the award resulted in a significant injustice." Kergosien, 390 F.3d at 355 (internal quotation marks omitted).

China BV, 480 F.3d 397, 401 (5th Cir. 2007) (quoting Brook v. Peak Int'l, 294 F.3d 668, 672 (5th Cir. 2002)).  If an arbitrator acts contrary to express contractual provisions, he has exceeded his powers.  Id. (citing Delta Queen Steamboat Co. v. AFL-CIO, 889 F.2d 599, 604 (5th Cir. 1989)).  However, when an arbitration agreement vests an arbitrator with the authority to interpret a contract, his construction must be enforced so long as it is "'rationally inferable from the letter or purpose of the underlying agreement.'" Glover v. IBP, Inc., 334 F.3d 471, 474 (5th Cir. 2003) (quoting Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1320 (5th Cir. 1994)).  An award is rationally inferable from the underlying contract if it "in some logical way, [is] derived from the wording or purpose of the contract."  Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co., 918 F.2d 1215, 1218 (5th Cir. 1990) (internal quotation marks omitted).  "Where limitations on the arbitrator's authority are uncertain or ambiguous . . . 'they will be construed narrowly.'"  Apache, 480 F.3d at 402 (quoting Action Indus., Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337, 343 (5th Cir. 2004)).  All doubts whether an arbitrator exceeded his authority must be resolved in favor of arbitration.  Kergosien, 390 F.3d at 355; Executone, 26 F.3d at 1320-21.

B.   **Analysis**

In its Motion to Vacate, Willbros argues that two aspects of the arbitrator's award should be vacated: (1) the "conditional awards"; and (2) the award of attorneys' fees and costs.

1.   The "Conditional Awards"

Willbros asserts that the arbitrator "exceeded his authority and committed a manifest disregard of the law" in its awards based on (1) Change Orders 1-4 of the ASASA contract and (2) the retainer invoice for the EPC-4A Outside Nigeria subcontract.  Document No. 1, ex. B at 8-15.  According to Willbros, both of these awards were made in equity, which was prohibited by UNCITRAL Rule 33.[3] UNCITRAL Rule 33 provides:

> The arbitral tribunal shall decide as *amiable compositeur* or *ex aequo et bono*[4] only if the parties have expressly authorized the arbitral tribunal to do so and if the law applicable to the arbitral procedure permits such arbitration.

---

[3] The subcontracts adopt the UNCITRAL rules.  Document No. 43, ex. B ¶ 22 (ASASA Subcontract) ("The Parties agree to resolve all differences arising out of or relating to this Subcontract through binding arbitration before one neutral arbitrator pursuant to the UNCITRAL Arbitration Rules."); Document No. 43, ex. C ¶ 22 (Inside Nigeria Subcontract) (same); Document No. 43, ex. D ¶ 22 (Outside Nigeria Subcontract) (same).

[4] *Ex aequo et bono* is defined to mean: "[a]ccording to what is equitable and good.  A decision maker who is authorized to decide *ex aequo et bono* is not bound by legal rules and may instead follow equitable principles."  BLACK'S LAW DICTIONARY 581 (7th ed. 1999).

UNCITRAL Article 33(3). In the Final Award, the arbitrator described his understanding of UNCITRAL Rule 33:

> The record before me indicates that the parties have NOT expressly authorized this tribunal to decide the matter on the basis of "equitable principles." Accordingly it is my duty to decide the case "in accordance with the terms of the contract and shall take into account the usages of the trade applicable to the transaction." I am prohibited by UNCITRAL Rule 33, in the absence of an express agreement otherwise, from considering equitable principles and/or theories in reaching my decision on each of the claims before me, but instead, I am instructed to make my determinations based on the terms of the contract, taking into account the usages of the trade applicable to the transaction.

Document No. 43, ex. E at 3 (Final Award). Willbros argues that the arbitrator failed to heed this rule and based findings on the equitable doctrine of substantial performance. Document No. 1, ex. B at 12-15. In regards to Change Orders 1-4 of the ASASA contract, the arbitrator stated: "Since I find that [HFG] submitted the . . . drawing package in *substantial compliance* with its professional and contractual responsibilities I hereby GRANT the claim." Document No. 43, ex. E at 7 (Final Award) (emphasis added). In regards to the retainage invoice for the EPC-4A Outside Nigeria subcontract, the arbitrator stated: "Since I hold that [HFG] has *substantially completed* its contractual obligations, I hold that it is entitled to be paid its $500,000 retainage presently held by Willbros." Id., ex. E at 18 (Final Award) (emphasis added).

9

Willbros asserts that "it is clear" that the arbitrator's awards for Change Order 1-4 and the retainage invoice were based on the doctrine of substantial performance because the arbitrator explicitly recognized that conditions precedent to recovery were not met.  It is undisputed that the ASASA subcontracts conditioned Willbros's performance on Mobil's approval or use of the drawings, and that the EPC-4A Outside Nigeria subcontract conditioned Willbros's performance on Mobil's issuance of an acceptance notice.  Document No. 43, ex. E at 7-8.  It is further undisputed that Mobil's approvals, or use and acceptance, had not occurred at the time of the arbitration.  Id., ex. E at 7.  Thus, Willbros reasons, the arbitrator's finding that HFG had "substantially complied" with the contracts and was entitled to recover, conditioned only on Mobil's approvals or use, and acceptance, was equitable in nature because the arbitrator "ignore[d] the language of the Contracts-- which explicitly required [Mobil] approval of a completed . . . package."

Substantial performance is an equitable doctrine that regards a substantial performance of a condition precedent to a right to recover as constituting full performance.  TA Operating Corp. v. Solar Applications Eng'g, Inc., 191 S.W.3d 173, 180 (Tex. App.--San Antonio 2005, no pet.).  The doctrine allows a party who is in breach, but who substantially performed its contractual obligations, to recover under the contract.  See Vance v. My

Apartment Steak House of San Antonio, Inc., 677 S.W.2d 480, 483 (Tex. 1984). The deficiency in performance is corrected by reducing the breaching party's award: the breaching party receives the contract price less the amount required to remedy defects. Id.

Here, the arbitrator's award was not based on the doctrine of substantial performance for several reasons. First, the arbitrator denied the entirety of Willbros's counterclaim with an explicit finding that "the evidence was insufficient to establish breach of contract on the part of [HFG]." Document No. 43, ex. E at 19. Likewise, the arbitrator's award does not equitably reduce HFG's award for Change Orders 1-4 or the retainage fee because HFG's designs were incomplete or because of any other failure of HFG to perform. Rather, the arbitrator found that HFG was entitled to the full subcontract prices conditioned only upon *Mobil's* conduct as required by the contracts, namely: (1) Change Orders 1-4 required Mobil's approval or use of the designs, and (2) the EPC-4A Outside Nigeria contract required Mobil to issue an acceptance notice. Document No. 43, ex. E at 7-8, 19. Thus, this is not a case where the arbitrator relied on equity to find that HFG had sufficiently satisfied all conditions to entitle it to an award reduced by the costs of remediating a defective performance. Rather, the arbitrator's ruling is properly interpreted as a factual finding that HFG has performed all conditions precedent within its own control and should recover the contract amounts, subject only to

*Mobil's* use or written approval of the ASASA designs, and (2) Mobil's issuance of an acceptance notice for the EPC-4A Outside Nigeria designs.  This understanding of the Arbitrator's decision seems especially apropos given his clear acknowledgment in the Award that he had no authority to apply equitable principles and must make "my determinations based upon the terms of the contract, taking into account the usages of the trade applicable to the transaction."  Indeed, contrary to Willbros's argument that the Arbitrator's holding that HFG's award was conditioned upon Mobil's approvals or use and acceptance was "to ignore the language of the Contracts--which explicitly required [Mobil] approval," in fact the Arbitrator gave full force and effect to those exact contractual requirements.  Accordingly, Willbros has not established that the arbitrator exceeded his authority in issuing awards based on the ASASA contract Change Order 1-4 and the EPC-4A Outside Nigeria retainage invoice, and has made no showing that the Arbitrator manifestly disregarded the UNCITRAL Arbitration Rules.

    2.   <u>Award of Attorneys' Fees and Costs</u>

Willbros also asserts that the arbitrator exceeded his authority in awarding attorneys' fees and costs to HFG.  Document No. 29 at 2-4.  The arbitrator's award provides the following:

> Both parties have asserted claims for Attorneys fees in excess of $500,000.00.  This indicates to me that each would say the amounts are "reasonable."  Since [HFG] is

>     the prevailing party in this arbitration I award them
>     their attorney's fees and costs in the sum of
>     $675,308.16, to be paid by Willbros West Africa, Inc. and
>     Willbros (Offshore) Nigeria, Ltd. jointly and severally
>     within thirty (30) days from the date of transmittal of
>     this Award to the Parties.

Document No. 43, ex. B at 20. According to Willbros, the arbitrator's ruling was "arbitrary, unreasonable, and without regard to guiding legal principles." Document No. 29 at 2. Willbros asserts that Texas law according to the Texas Arbitration Act ("TAA") requires the arbitrator to consider more evidence than mere billing statements to determine what amount of attorneys' fees is reasonable. Document No. 43 at 5. Because the arbitrator only considered the attorneys' billing statements, Willbros concludes that the arbitrator had insufficient evidence to determine a reasonable award, and thus exceeded his authority in making an award.

FAA rules, not state rules, apply to arbitrations involving interstate commerce unless the arbitration clause clearly and unambiguously mandates that a state arbitration statute applies. Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212, 1217 (1995); *accord* Action Indus., Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337, 341 (5th Cir. 2004). A general choice-of-law provision does not evince the parties' clear intent to opt out of the FAA default rules. Action Indus., 358 F.3d at 341 (citing Mastrobuono, 115 S. Ct. at 1218). Here, the subcontracts each contain a general

13

Texas choice-of-law clause, but they include no explicit reference to or adoption of the TAA.[5] Thus, the Court must apply the FAA, not the TAA. Id. at 342 (holding that the Tennessee choice-of-law clause did not clearly indicate that the parties intended to be governed by the Tennessee Arbitration Act, and was therefore insufficient to overcome the presumption that the FAA controlled).

Under the FAA, when an arbitrator is vested with the authority to interpret a contract, his construction must be enforced so long as it is "'rationally inferable from the letter or purpose of the underlying agreement.'" Glover, 334 F.3d at 474 (5th Cir. 2003) (quoting Executone, 26 F.3d at 1320). Here, each subcontract provides that "[t]he parties agree to resolve all differences arising out of or relating to this subcontract through binding arbitration before one neutral arbitrator pursuant to the UNCITRAL Arbitration Rules."[6] Article 40 of the UNCITRAL rules provides the arbitrator with broad authority to award attorneys' fees and costs to the prevailing party:

---

[5] The general choice-of-law clause reads, "This subcontract shall be governed and construed in accordance with the laws of the State of Texas, excluding any conflict of law or other provision referencing the laws of another jurisdiction." Document No. 19, ex. A ¶ 22 (ASASA Subcontract); Document No. 19, ex. B ¶ 22 (Inside Nigeria Subcontract); Document No. 19, ex. C ¶ 22 (Outside Nigeria Subcontract).

[6] Document No. 43, ex. B ¶ 22 (ASASA Subcontract); Document No. 43, ex. C ¶ 22 (Inside Nigeria Subcontract); Document No. 43, ex. D ¶ 22 (Outside Nigeria Subcontract).

>    1. Except as provided in paragraph 2, the costs of arbitration shall in principle be borne by the unsuccessful party. However, the arbitral tribunal may apportion each of such costs between the parties if it determines that apportionment is reasonable, taking into account the circumstances of the case.
>
>    2. With respect to the costs of legal representation and assistance referred to in article 38, paragraph (e), the arbitral tribunal, taking into account the circumstances of the case, shall be free to determine which party shall bear such costs or may apportion such costs between the parties if it determines that apportionment is reasonable.

UNCITRAL Arbitration Rules, art. 40; *see also* Int'l Thunderbird Gaming Corp. v. United Mexican States, 473 F. Supp. 2d 80, 85 (D.D.C. 2007) (noting that Article 40 gives the arbitrator "wide discretion" to award costs and fees). The arbitrator's authority to award attorney's fees is logically derived from the subcontracts' invocation of the UNCITRAL Rules.[7] Furthermore, the Court finds that the arbitrator did not exceed his authority in finding that $675,308.16 was the "reasonable" amount of attorneys' fees to award HFG. Kergosien, 390 F.3d at 358 ("When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly

---

[7] Willbros never argues that the UNCITRAL rules do not apply to this arbitration. Indeed, Willbros relied on UNCITRAL Article 33(3) as the basis for its argument that the arbitrator was prohibited from applying equitable principles. *See* Document No. 43 at x, 7 ("The UNCITRAL Rules to which the Arbitrator was bound to follow expressly prohibit the Arbitrator from rendering awards in equity and require him to decide matters in strict accordance with the Subcontracts.").

factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." (quoting Major League Baseball Players Ass'n v. Garvey, 121 S. Ct. 1724, 1728 (2001))). Thus, the Court declines to vacate the attorneys' fees award under the FAA.

III. Order

Accordingly, it is

ORDERED that Plaintiff Willbros's Motion to Vacate the Arbitration Award, in Part, or, in the Alternative, to Modify or Correct the Award (Document No. 1, ex. B) is in all things DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 12th day of February, 2009.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE